greater detail than as originally filed," but is a radical change of the statement of the value of the assets.

It was suggested in behalf of the respondents that it would be unwise to vacate the orders at this late day. It was intimated by the appellants that under a scheme like this a few of the more wealthy parties in interest could purchase this plant at their own price. We do not know what the fact may be. This is a statutory proceeding, and, to be effective, the steps prescribed by the statute must be substantially pursued. We think this had not been done in this case.

The orders appealed from should be reversed, with $10 costs and disbursements, and the motion to vacate granted, with $10 costs. All concur.

UNITED STATES NAT. BANK v. UNDERWOOD.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

PARTNERSHIP—RETIRING PARTNER—LIABILITY FOR FIRM DEBT.

    In an action against U. and another on a note of a firm composed of defendants, it appeared that defendants dissolved partnership before the suit was brought, and that a new partnership was formed, of which U. was not a member; that the dissolution agreement provided that the new firm should have all the assets and assume all the liabilities of the old firm; and that plaintiff had notice only of the fact of dissolution. *Held*, that plaintiff was not affected by such agreement, and it was hence error not to direct a verdict against U.

Appeal from circuit court.

Action by the United States National Bank against William A. Underwood and C. H. Venner, on a note given by a firm formerly composed of defendants. From a judgment entered on a verdict in favor of defendant Underwood, and from an order denying its motion for a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William Allen Butler, for appellant.
David McClure, for respondent.

RUMSEY, J. The action was brought to recover of the defendants, as partners in the firm of C. H. Venner & Co., the amount due upon a promissory note given by that firm. The defendant Underwood alone answered. It appeared that on the 6th day of July, 1891, the firm of C. H. Venner & Co. was composed of William Underwood and Clarence H. Venner, who are the defendants in this action. On the 6th day of July, this firm borrowed of the plaintiff $50,000, and gave their note for that sum, payable on demand, secured by collaterals. The note was in the ordinary form of a collateral security note, and contained at the end an agreement that, in case of an exchange of or addition to the collateral above mentioned, the provision of the note should extend to such new or additional collateral. On the 31st day of July, 1891, the note remaining unpaid, the firm of C. H. Venner & Co. was dis-

solved by the retirement of the defendant Underwood, and a new firm was formed, of which the defendant Underwood was not a member. Whether the plaintiff had notice of this dissolution was disputed upon the trial. That fact was submitted to the jury, and was found in favor of the defendant, and therefore it must be assumed that notice of the dissolution of the old firm and the formation of the new one was communicated to the plaintiff about the 1st day of August, 1891, as found by the jury. This notice consisted of a letter signed by the members of the old firm, announcing simply that "the copartnership theretofore existing between Clarence H. Venner and William A. Underwood, under the firm name of C. H. Venner & Co., has this day been dissolved, by mutual consent." It was signed by the two members of the old firm. Accompanying it, and upon the same sheet, was another letter, dated the succeeding day, signed by Venner and two others, announcing that they had formed a copartnership under the name of C. H. Venner & Co., and would continue the business of the late firm of the same name. It appeared upon the trial that, at the time of the dissolution of the first firm of C. H. Venner & Co., it was agreed between the partners that C. H. Venner & Co. should have all the assets and assume all the liabilities of the firm, but there was no proof that this agreement was brought to the notice of the plaintiff. The agreement of dissolution which contained the contract that Venner should assume the liabilities of the firm was offered in evidence and received, subject to be stricken out unless proof was made that notice of it had been brought to the knowledge of the plaintiff. No proof of that kind was made. Therefore, in the consideration of this case it must be assumed that, while the plaintiff had notice of the dissolution of the firm of C. H. Venner & Co., it had no notice whatever of the terms upon which the dissolution was effected, or of the fact that Venner took the assets and assumed the liabilities of the old firm. When the evidence had closed, the only question in dispute between the parties was whether or not notice of the dissolution of the firm had been served upon the plaintiff, as claimed by the defendant. Upon that state of the proof, the plaintiff moved for a verdict. The motion was denied, and the plaintiff excepted.

The court submitted to the jury only the question whether the plaintiff had received notice of the fact of the dissolution of the old firm, charging substantially that, if they found that such notice was received, the defendant was entitled to a verdict. To this portion of the charge no exception was taken, nor was there any request to go to the jury upon the question whether the plaintiff had notice of the fact that Venner had assumed the liabilities of the old firm. The only question presented, therefore, upon this branch of the case, is whether upon the undisputed facts, and the additional fact that the plaintiff had notice of the dissolution itself, it was error to deny the plaintiff's motion that the verdict be directed in its favor.

It is not to be disputed that when a firm is dissolved, and one of the partners takes the assets and assumes the liabilities, that

partner occupies thereafter the position of a surety, not only as between the partners themselves, but as to all others who have had dealings with the firm, to whom notice of the new contract has been brought. The mere fact of dissolution has no effect upon the rights of third parties. It is said in T. Parsons on Partnership that no dissolution of any kind affects the rights of third parties who have had dealings with the partnership, without their consent. This is the universal rule, without any exception whatever. T. Pars. Partn. 384, 385; Story, Partn. 334. As the fact of the dissolution has no effect upon the rights of third parties, of course the knowledge that there has been dissolution is equally unimportant. So long as the third person has information only that the partnership has been dissolved, and knows no more about it, he is still at liberty to treat both of the partners as principals with regard to all contracts then existing between them. It is only when he has had notice of the special circumstances connected with the dissolution by which one partner has assumed the relation of surety that he is called upon to respect that relation, and give effect to the changed attitude of the one who claims the right of surety. The cases seem to be unanimous on this point. In Palmer v. Purdy, 83 N. Y. 144, 147, it is said by Finch, J., delivering the unanimous opinion of the court, that it is settled that one of several original debtors can so contract with the others for their assumption and payment of the common debt as to acquire the rights of a surety, upon knowledge of the new arrangement being communicated to the creditors. But when it is sought to invest one or more of them with new equitable rights outside of the original contract, by notice to the creditor of the later arrangement, it is not too much to require that such notice shall be definite and distinct, and so given as fully and fairly to apprise the creditor of the new agreement in fact made, and the changed attitude of the debtor claiming the rights of a surety. This case is followed upon that point in later cases. Grow v. Garlock, 97 N. Y. 81, 87. In fact, there seems to be no exception to the rule that the changed relation of the partners towards each other after the dissolution has no effect upon the rights of the creditor, unless there has been brought to his notice, not only the fact of the dissolution, but the further fact that, by the terms of the dissolution, one of the partners has assumed the relation of principal debtor, and the others that of surety. This rule is recognized by all the cases cited by the respondent's counsel. In Colgrove v. Tallman, 67 N. Y. 95, it is said that where a partnership is dissolved, and one partner purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, he thereby becomes in equity the principal debtor as to such debts, and the other is surety, and the creditor, having notice of such agreement, is bound by such relationship. Applying this well-settled rule to the facts established in this case, the conclusion necessarily follows that the plaintiff was not called upon to treat the defendant Underwood in any other way than as a principal debtor. That

being the situation of the parties, there is nothing shown in this case which would warrant a holding that the defendant in any way ceased to be liable for this debt, and therefore it was error on the part of the court to refuse to order a verdict for the plaintiff, and the exception to that refusal was well taken.

For that reason the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concur.